## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 22-2364

**The Homeowners Association of Players Club Villas Townhomes, Inc.**, a Colorado Non-Profit Corporation,

      Plaintiff,

v.

**QBE Insurance Corporation**, a Pennsylvania Corporation,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, The Homeowners Association of Players Club Villas Townhomes, Inc., by and through its attorneys, Colella Zefutie, L.L.C., for its Complaint against the above-named Defendant, QBE Insurance Corporation, states as follows:

## I.      NATURE OF THE ACTION

1.      Plaintiff brings this action seeking economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits. Plaintiff also seeks damages arising from Defendant's bad faith breach of its insurance contract.

## II.    PARTIES

2.    The Homeowners Association of Players Club Villas Townhomes, Inc. ("Players Club" or "Plaintiff") is a Colorado nonprofit corporation with its principal place of business at 2675 South Abilene Street, Aurora, Colorado 80014.

3.    On information and belief, at all material times relevant to this Complaint, QBE Insurance Corporation ("QBE" or "Defendant") is an insurance company organized under the laws of the state of Pennsylvania; its principal place of business is in New York, New York; and its administrative office is at One QBE Way, Sun Prairie, Wisconsin 53596.  At all relevant times, QBE engaged in the business of insurance and was licensed to write policies in the State of Colorado.

## III.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the parties.  Venue is proper under 28 U.S.C. § 1391, and this court has personal jurisdiction over Defendant, because: (1) Defendant sold Plaintiff's insurance policy to Plaintiff in Colorado; (2) through the insurance policy, Defendant provided insurance coverage for a property located in Colorado; and (3) Plaintiff's claims arise from or otherwise relate to Defendant's transaction of business and actions in Colorado.

## IV.    FACTUAL BACKGROUND

5.    Plaintiff purchased a commercial lines insurance policy (number IHG1000543-01) for the period January 25, 2021 to January 25, 2022 ("the Policy"), which insured the property called Players Club Villas, a community consisting of 86 townhome units in 43 duplex buildings near 103 Sugar Plum Way, Castle Rock, Colorado 80104 ("the Property").

6.    On or around June 5, 2021, Plaintiff experienced a severe weather-related event, which caused substantial wind and hail damage to the Property.  The property's damage constitutes a covered loss under the Policy issued by Defendant.

7.    On or about June 10, 2021, Plaintiff filed a claim with QBE, which has been assigned claim number 809927N, and Defendant assigned an adjuster to adjust the claim.

8.    Defendant retained the services of Jon Asp ("Mr. Asp") at Sedgwick Claims Management Services, Inc. to adjust the claim.

9.    Mr. Asp further retained the services of Unified Building Sciences & Engineering, Inc. ("UBSE").

10.    UBSE inspected the Property and issued report dated August 9, 2021 ("the UBSE Report"), which vastly understated the damage to the Property from the June 2021 weather event.

11.    Defendant made numerous errors in estimating the value of Plaintiff's claim, as exhibited by its adjuster's method of investigation and estimation of Plaintiff's loss, all of which were intentionally designed to minimize and underpay the loss incurred by Plaintiff.  Defendant's adjuster failed to fully quantify Plaintiff's covered losses, thus demonstrating that Defendant's adjuster did not conduct a thorough investigation of Plaintiff's claim and/or intentionally adjusted Plaintiff's claim improperly.

12.    Specifically, Defendant, independently and through its adjuster, intentionally and knowingly conducted a substandard investigation of the Property.  This is evidenced by Defendant's adjuster's estimate, which failed to include all necessary items Plaintiff is entitled to under the Policy to place the Property in its pre-loss condition.  Specifically, Defendant failed to adequately quantify the covered damages to the Property's roofing and HVAC systems and the

3

damage to the paint.   As a result of Defendant's actions, Plaintiff was forced to engage the services of a public adjuster, Ron Cooper ("Mr. Cooper").

13.     On or about September 21, 2021, Defendant submitted to Plaintiff an estimate of the amount Defendant owed Plaintiff for the covered repairs required by the damage caused by the June 2021 storm ("the QBE Estimate"), which totaled a paltry $34,673.99 for all damage to all 43 buildings at the Property.

14.     On or about September 21, 2021, Defendant submitted to Plaintiff a payment of $1,587.05 for the actual cash value determined by Defendant minus the deductible.

15.     The QBE Estimate did not account for the additional required repairs communicated to Mr. Asp and UBSE by Mr. Cooper.

16.     Moreover, although damages to painted surfaces were noted in the UBSE Report, they were completely ignored in the QBE Estimate.

17.     On February 7, 2022, after inspecting the property, Mr. Cooper issued an estimate for repairing the June 2021 weather damage at $3,467,487.63.

18.     After carefully inspecting the property, Mr. Cooper communicated to Mr. Asp and UBSE that the UBSE Report did not account for a large scope of the roofing systems that required replacement due to the June 2021 storm.

19.     Mr. Cooper also communicated to Mr. Asp and UBSE that there were additional damages to soft metals, siding, cladding, and other painted surfaces that should be covered and repaired, which also were not accounted for in the UBSE Report.

20.     Mr. Cooper requested that Defendant conduct a reinspection of the damage at the Property due to the June 2021 storm.

21.     Mr. Asp stated that Defendant would not be adjusting the claim any further until and unless Plaintiff provided an engineering report on the damage.

22.     Relying on Mr. Asp's representation, Plaintiff retained Engineering Specialists Inc. ("ESI") to inspect the exterior elevations and roof coverings at the Property for hailstorm-related damage.

23.     ESI thoroughly inspected the Property and issued a 59-page report dated July 7, 2022 ("the ESI Report"), which identified numerous aspects of damage due to the June 2021 storm that were not accounted for by the QBE Estimate.

24.     On August 1, 2022, Plaintiff's counsel sent a letter to Defendant attaching and summarizing the ESI Report and requesting that Defendant reevaluate its coverage position within 14 days.  Defendant did not respond to the August 1, 2022 letter.

25.      On August 17, 2022, Plaintiff's counsel sent an e-mail to QBE stating that he had not received a response from Defendant and asking whether this meant that Defendant was "not interested in pursuing a fair settlement of the claim."  Defendant has not responded to that e-mail.

26.     Defendant wrongfully underpaid Plaintiff's claim and refused to issue a full and fair payment for the covered loss as was rightfully owed under the policy.

27.     Defendant's estimate did not allow for adequate funds to cover the cost of repairs and therefore grossly undervalued all of the damages to the Property.  As a result of Defendant's conduct, Plaintiff's claim was intentionally and knowingly underpaid.

28.     At all times relevant herein, Defendant's adjuster acted as an authorized agent of Defendant and acted within the course and scope of his authority as authorized by Defendant. Plaintiff relied on Defendant and Defendant's adjuster to properly adjust the claim regarding the Property and to be issued payment to fix such damage, which has not happened.

5

29.     Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the policy.  Specifically, Defendant refused to pay the full proceeds owed under the policy.  Due demand was made by Plaintiff for proceeds to be in an amount sufficient to cover the damage to the Property.

30.     Defendant and/or Defendant's assigned agent sold the Policy to Plaintiff, making various statements and representations to Plaintiff that the Property would be covered.  Relying on the promises and representations made by Defendant and/or Defendant's assigned agent, Plaintiff filed a claim under the Policy with the belief that the Property would be covered after a severe weather event such as the one that damaged the Property.

31.     All conditions precedent to recovery under the Policy had, and have, been carried out and accomplished by Plaintiff.

32.     As a result of Defendant's wrongful acts and omissions, Plaintiff was compelled to retain counsel to represent its interests and initiate this action.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract by Defendant)**

33.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

34.     At the time of the June 5, 2021 storm, Plaintiff was entitled to coverage by a contract of insurance with Defendant, under policy number IHG1000543-01, which covers the Property.

35.     The subject insurance contract provided that Defendant would pay for damages, which an insured is legally entitled to recover from a covered peril.

6

36.     Defendant breached its contractual duties by refusing and failing to extend and/or offer reasonable benefits of any kind to Plaintiff in compensation for damage to the Property, which is a covered loss.

37.     As a direct consequence of Defendant's breach of contract, Plaintiff has suffered damages for which Defendant is legally liable, as well as additional litigation costs and attorney's fees in amounts to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(Common Law Bad Faith)**

38.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

39.     Defendant sold Plaintiff the coverage at issue to provide benefits for the covered losses such as wind and hailstorms that occur within the policy period.

40.     Pursuant to the Policy, Defendant owed Plaintiff the duty of good faith and fair dealing.

41.     By virtue of the special nature of the insurance contract and the relationship between Plaintiff and Defendant, Defendant owed Plaintiff the duty of good faith and fair dealing in handling its claim.  *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003).  The basis of this liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith.  *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004).

42.     Defendant had a duty to act reasonably and in good faith in handling Plaintiff's claims and in the payment of Plaintiff's claims, which includes the obligation to (a) act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff, (b) determine the amounts due and owing under the Policy in question, and (c) pay all amounts due and owing.

43. Defendant breached its duty of good faith and fair dealing and acted in bad faith towards Plaintiff because it negligently, improperly, and/or unreasonably handled the claim and failed to properly investigate, evaluate, negotiate and/or settle the claim when it could have or should have done so. Defendant had a duty to act fairly and honestly and with due regard for Plaintiff's interests, which it deliberately and intentionally failed to do.

44. Likewise, Defendant owed a duty to Plaintiff to act timely, to reasonably investigate and make determinations of amounts due and owing, to avoid delay, to not force Plaintiff to have to litigate or seek legal processes to effectuate their entitlement to benefits unreasonably and to not force Plaintiff to be required to incur unwarranted or excessive costs to seek such benefits.

45. Defendant has acted in bad faith against Plaintiff and Plaintiff's interests (a) in the manner in which it has breached its contract and contractual duties owed to Plaintiff, (b) by failing to pay benefits, it knows or should know Plaintiff is entitled to receive, (c) by forcing delays, (d) by forcing Plaintiff to have to seek legal action to enforce their right to benefits, and (e) by forcing Plaintiff to incur unreasonable cost and delay to its detriment.

46. Defendant owed Plaintiff the non-delegable duty to investigate the claim objectively and not just to consider, rely on, and/or seek out facts from which to deny benefits or attempt to not pay the correct amount owed.

47. Defendant owed Plaintiff the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

48. Plaintiff cooperated with Defendant in the processing of its claim for the covered benefits.

49. Plaintiff did not fail to mitigate or minimize its damages.

50.    Plaintiff cooperated with Defendant's investigation and did not erect any obstacles to Defendant's ability to investigate and evaluate Plaintiff's claims for the covered benefits owed.

51.    Defendant knew that Plaintiff purchased the Policy to protect the covered premises.

52.    Defendant knew that its decision to deny benefits owed to Plaintiff was intentional and not accidental.

53.    Defendant knew that it owed an obligation of good faith and fair dealing to Plaintiff.

54.    Defendant knew that its denial to pay the benefits owed would cause Plaintiff financial hardship.

55.    Defendant should have known that its conduct was unreasonable and/or Defendant recklessly disregarded the fact that its conduct was unreasonable.

56.    Defendant breached its duty to act reasonably and in good faith by, among other things:  (a) failing to conduct a reasonable and timely investigation of the facts and law applicable to this matter; (b) failing to appraise the entire loss that resulted from hail and wind; (c) favoring its interests to the exclusion of Plaintiff; (d) failing to effectuate prompt, fair and equitable resolution of the claims after liability had become clear; (e) conducting an incomplete, or outcome-oriented investigation of the loss; (f) delegating its investigation to others without the proper background, knowledge, or experience to do so; (g) by improperly directing or allowing its agents and/or representatives to perform a cursory investigation of the damage to the Property; (h) sending incorrect coverage of loss decisions; (i) compelling Plaintiff to become involved in litigation without conducting a thorough investigation; (j) forcing its insured to become involved in litigation to recover amounts due; and (k) otherwise unreasonably and improperly handling this claim as an unfair settlement practice pursuant to C.R.S. § 10-3-1104(1)(h).

57.     Defendant breached its obligations to Plaintiff by failing to pay the proper amount on Plaintiff's claims by hiring agents/adjusters and estimators who did not properly investigate the loss.

58.     Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing implied in every contract of insurance.

59.     Defendant's bad faith and breach of its covenant of good faith and fair dealing has caused Plaintiff to suffer and continue to suffer damages, attorneys' fees and costs incurred in bringing this lawsuit, together with pre-judgment interest at the highest rate allowed by law.

60.     As a direct consequence of Defendant's bad faith breach of contract, Plaintiff has suffered damages for which Defendant is legally liable, as well as additional litigation costs and attorney's fees in amounts to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Statutory Bad Faith)

61.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

62.     Plaintiff suffered damages and losses to the Property and thus filed a claim with Defendant.

63.     Defendant denied adequate payment of benefits to Plaintiff.

64.     Defendant acted unreasonably in failing to properly evaluate Plaintiff's claim, and the denial of the claim and adequate benefits thereunder was without reasonable basis.

65.     Defendant's actions in this matter constitutes an improper and/or unreasonable delay and/or denial of the claim in violation of the Colorado Revised Statutes.  *See* COLO. REV. STAT. §§ 10-3-1115, 10-3-1116.

66.     C.R.S. § 10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant like Plaintiff.

67.     Defendant unreasonably delayed and/or denied benefits owed to Plaintiff that should have been reasonably paid to Plaintiff, based on what was contained in Defendant's own file.

68.     Plaintiff suffered damages as a result of this denial, and Defendant's unreasonable conduct was the cause of Plaintiff's damages.

69.     Plaintiff is entitled, because of this unreasonable delay/denial, by law to two times the amount of any covered benefits and reasonable attorney's fees and court costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court to enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1.     Damages for Defendant's breach of contract;

2.     All unpaid covered benefits owed under the Policy;

3.     Two times the amount of all covered benefits under the Policy;

4.     Punitive damages;

5.     Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

6.     Other damages including attorneys' fees resulting from Defendant's bad faith and breach of the covenant of good faith and fair dealing including damages resulting from Defendant's bad faith refusal to pay for the damages to Plaintiff's property;

7.     Damages for Defendant's breach of the covenant of good faith and fair dealing;

8.     Pre- and post-judgment interest; and

9.    For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: September 14, 2022                    s/ *Alan T. Dickey*

Alan T. Dickey (Colorado Bar No. 31842)
COLELLA ZEFUTIE LLC
1300 I Street, N.W.
Suite 400E
Washington, D.C. 20005
Business Phone: (202) 538-0999
Business Fax: (202) 920-0894
Email: adickey@czlaw.com

*Attorneys for Plaintiff*
*The Homeowners Association*
*of Players Club Villas Townhomes, Inc.*