**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02364-NYW-SBP

THE HOMEOWNERS ASSOCIATION OF PLAYERS CLUB VILLAS TOWNHOMES, INC.,
a Colorado Non-Profit Corporation,

      Plaintiff,

v.

QBE INSURANCE CORP., a Pennsylvania Corporation,

      Defendant.

---

**ORDER GRANTING MOTIONS TO STRIKE AND FOR LEAVE TO FILE SURREPLY**

---

**Susan Prose, United States Magistrate Judge**

      This action involves an insurance dispute between Plaintiff Homeowners Association of Players Club Villas Townhomes, Inc. (the "HOA") and Defendant QBE Insurance Corp. ("QBE"). The case comes before the court on QBE's motion, ECF No. 49 ("Motion to Strike" or "Motion"), asking the court to strike the second report of Paul Douglas, the HOA's retained expert, ECF No. 53-6 ("Second ESI Report"). The HOA responded, ECF No. 53 ("Response"), and QBE replied, ECF No. 60 ("Reply"). The HOA has sought leave to file a surreply. ECF No. 61 ("Motion for Leave"). This court considers the Motion to Strike and Motion for Leave pursuant to 28 U.S.C. § 636(b). *See* ECF Nos. 50, 62. For the reasons set forth below, the court respectfully **GRANTS** both Motions.

**I.**     **Motion for Leave to File Surreply**

      As a threshold matter, this court considers the Motion for Leave, in which the HOA

requests leave to file a surreply in opposition to the Motion to Strike. The HOA argues that a surreply is warranted because QBE "levels several false allegations about the truthfulness of certain statements made by [the HOA's] counsel." Motion for Leave at 2. In the proposed surreply, ECF No. 61-1, the HOA seeks "to rebut those false allegations" and to file a supplemental declaration from its counsel, Alan T. Dickey, ECF No. 61-2, that purports to clarify when counsel knew of certain events related to the alleged discovery violation at issue here. QBE opposes this request and argues that its reply brief merely "refuted [the HOA]'s position and did not present any new argument or material fact not already in the record." ECF No. 65 at 2.

Neither the Federal Rules of Civil Procedure nor the Local Rules governing civil cases in this District allow for surreplies as a matter of right. *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 276 (D. Colo. 2022). While surreplies are an "unusual privilege," *S.E.C. v. Harman Wright Grp., LLC*, 777 F. App'x 276, 278 (10th Cir. 2019), "[a] district court must permit a surreply where it relies on new materials—i.e., new evidence or new legal argument—raised in a reply brief." *Carlson*, 341 F.R.D. at 276 (quoting *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-00037-PAB-CBS, 2010 WL 420046, at *10 (D. Colo. 2010) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006))). Pursuant to these standards, the court finds that it is appropriate to allow the filing of the HOA's surreply. In its Reply, QBE disputed the veracity of certain representations made by counsel in the HOA's response, and in the interest of resolving the instant dispute on a complete record, the court finds that the HOA should be allowed to respond to these arguments. The court therefore **GRANTS** the HOA's Motion for Leave, ECF No. 61, and considers the surreply and the

accompanying Supplemental Declaration of Alan T. Dickey, ECF No. 61-2 ("Supp. Dickey

Decl."), in deciding the Motion to Strike.

## II.    Motion to Strike

### A.    Procedural and Factual Background

The HOA claims that its buildings, which are located at 103 Sugar Plum Way in Castle

Rock, Colorado (hereafter, "the Property"), were damaged by a hailstorm on June 5, 2021.

Complaint, ECF No. 1 ¶ 5. The HOA sought coverage under its insurance policy with QBE, who

investigated the claim, adjusted the estimate, and paid out the value of the claim less the

deductible. The HOA disagreed with QBE's valuation and subsequently filed this lawsuit

seeking damages for breach of contract, common law bad faith, and violation of Colorado

Revised Statutes §§ 10-3-1115 and 1116. *See generally id.*

Prior to filing this case, the HOA retained Engineering Specialists Incorporated ("ESI")

to inspect the roofs at the Property. Reply at 3. Anthony Siapush, a Certified Environmental

Specialist who worked for ESI, inspected the roofs of five of the 43 buildings on the Property on

June 14, 2022. *See* ECF No. 53-2 at 7, 9-11. On July 7, 2022, ESI submitted a formal report of

this inspection, ECF No. 53-2 ("First ESI Report"), which was signed by Mr. Siapush; Andrew

Gonka, a forensic consultant; and Paul M. Douglas, a professional engineer who has been

designated by the HOA as its expert in this matter. *Id.* at 17. Sometime before the HOA filed the

instant action on September 14, 2022, it provided a copy of the First ESI Report to QBE's claims

handler. Affidavit of Peter J. Morgan, ECF No. 49-1 ("Morgan Aff.") ¶ 4 n.1.[1]

---

[1] Mr. Morgan withdrew as QBE's counsel on March 18, 2024, ECF No. 45, and was succeeded
by attorney Jane E. Young.

The court set an affirmative expert disclosure deadline of September 1, 2023. ECF No. 26. The HOA made its initial expert disclosures on that date, but "inadvertently" disclosed *QBE's* engineering expert (Peter Marxhausen, P.E.), instead of *the HOA's* engineering expert (Mr. Douglas). Declaration of Alan T. Dickey, ECF No. 53-1 ("Dickey Decl.") ¶ 4; *see also* 9/1/2023 Plaintiff's 26(a)(2) Designation of Expert Witnesses, ECF No. 53-4. On November 27, 2023, following a telephone call with QBE's counsel, Mr. Dickey discovered this "inadvertent error," which prompted him to serve revised disclosures in which the HOA disclosed Mr. Douglas as a retained expert, as well as the First ESI Report prepared in July 2022. Dickey Decl. ¶¶ 5-6; Morgan Aff. ¶ 4.

Between November 28 and December 4, 2023, counsel for the parties met and conferred several times. Dickey Decl. ¶ 7; Morgan Aff. ¶¶ 5-6. Ultimately, QBE agreed not to object to the HOA's late disclosure of Mr. Douglas, but the parties dispute whether there were conditions on that agreement. According to QBE, it agreed not to object to this late disclosure only if the HOA agreed "to limit Mr. Douglas's opinions to those expressed in his July 7, 2022 report and endorsed by the HOA on November 28, 2023." Morgan Aff. ¶ 6. The HOA submits that no such agreement was reached, although Mr. Dickey does assert that he "reassured" QBE that "the opinions in Mr. Douglas's [First ESI Report] were the same as previously disclosed to QBE." Dickey Decl. ¶ 7. Further, the HOA maintains that the parties did not discuss additional reports from Mr. Douglas, nor did it "promise that [it] would not disclose any future supplemental report if one was written by Mr. Douglas." *Id.*

On December 5, 2023, the court granted the parties' joint request to extend the discovery deadline until February 12, 2024. ECF Nos. 33, 35. Then, in February 2024, a series of actions

ensued that culminated in the generation of a second report from Mr. Douglas.

On an unspecified date sometime in "early February 2024," Mr. Dickey called Mr. Siahpush of ESI—recall that Mr. Siahpush was the ESI official physically present at the inspection of the Property in June 2022—to obtain dates for the deposition of Mr. Douglas, the professional engineer from ESI whom the HOA chose to designate as its expert in this matter. Supp. Dickey Decl. ¶ 3. On that call, ESI indicated (for the first time, according to Mr. Dickey) that it "might prefer to inspect additional roofs" at the Property. *Id.* ¶ 4. In a follow-up conversation on February 5, ESI confirmed that it wanted to perform an additional inspection, and Mr. Dickey signed a work order authorizing that inspection. *Id.* ¶ 5; February 5, 2024 Work Order, ECF No. 60-1 ("Work Order"). The Work Order required that ESI's

> forensic analysis and site investigation of the subject sites shall include detailed forensic analysis of 11 randomly selected townhouse buildings at the site to evaluate the exterior elevations and roof covering with photographic documentation of all storm-related damage to the exterior and roof covering of the building structures.

Work Order at 3.

Even after signing the Work Order, Mr. Dickey asserts that he remained in the dark about ESI's intention to physically inspect the eleven additional roofs. On the morning of February 8, 2024, Mr. Dickey claims to have learned for the first time that inspectors from ESI (a group that, this time, included Mr. Douglas) had traveled from their place of business in Nebraska to conduct an inspection of additional roofs at the Property. Dickey Decl. ¶ 8.[2] Mr. Dickey states that he was surprised by both the timing of this inspection and the lack of notice from ESI, and

---

[2] Both the HOA's revised disclosures and the Second ESI Report indicate that the inspection actually occurred on February 14, 2024. Second ESI Report at 7; ECF No. 49-4 at 2.

that he "immediately notified the HOA's personnel that ESI intended to access the property that morning." Supp. Dickey Decl. ¶ 7 (cleaned up). At no point, though, did Mr. Dickey inform QBE or its attorneys of these developments or provide QBE an opportunity to have its expert present for ESI's second inspection. *See* Reply at 3.

On February 12, 2024, the parties jointly sought, and the court granted, an extension of the discovery deadline until February 28, 2024. ECF Nos. 36, 38. In the parties' motion for an extension, they represented to the court that they had scheduled Mr. Douglas's deposition for February 28, 2024. ECF No. 36 at 2. Then, on February 28, 2024, Mr. Dickey submitted another joint motion seeking an additional one-week extension of the discovery deadline. ECF No. 39. The sole basis for the requested extension was that Mr. Douglas was scheduled to testify at a trial in Louisiana that had run long, and that he needed additional time to prepare for his deposition in the instant matter. *Id.* at 1-2. The court granted the request and extended the discovery deadline to March 5, 2024. ECF No. 41.

On February 29, 2024, ESI emailed Mr. Dickey a draft report that included information from the second inspection conducted in early February. Dickey Decl. ¶ 9. Mr. Dickey states that prior to receiving the draft, "I had received no notice that ESI intended to prepare a supplemental report," and "I had never asked anyone at ESI to prepare a supplemental report." Supp. Dickey Decl. ¶¶ 9-11. On Friday, March 1, 2024, Mr. Dickey received a final version of the Second ESI Report, which he forwarded to QBE's counsel the same day. Dickey Decl. ¶ 9; Morgan Aff. ¶ 8. QBE emphasizes that this was just four days before Mr. Douglas's scheduled deposition on Tuesday, March 5, 2024 (which was also the deadline for completing discovery). Reply at 6. QBE further avers that the HOA conveyed the Second ESI Report in a less-than-forthright

manner as Mr. Dickey never told QBE about the Second ESI Report, which was "buried" in Mr. Douglas's 5,500-page expert file. *Id.* at 2.

Mr. Douglas's deposition proceeded on March 5, 2024. Mr. Morgan, then-counsel for QBE, did not ask questions about the Second ESI Report because, as he put it, the report was "not going to be part of our case." Dickey Decl. ¶ 11. After the deposition ended on March 5, the HOA served on QBE "Plaintiff's Second 26(a)(2) Revised Designation of Expert Witnesses," which referenced, but did not attach, the Second ESI Report. ECF No. 49-4. According to Mr. Morgan, the HOA did not confer with QBE's counsel regarding the submission of the Second ESI Report, Morgan Aff. ¶ 9, nor did it seek leave from this court to present a "Second 26(a)(2) Revised Designation of Expert Witnesses" more than six months after the deadline for disclosing affirmative expert witnesses had passed.

QBE filed the Motion to Strike on April 4, 2024. In the Motion, QBE requests that this court strike the HOA's disclosure of the Second ESI Report and preclude any testimony from Mr. Douglas or any other witness—lay or expert, including Ron Cooper, a public adjuster disclosed as a "hybrid fact/expert witness" for ESI, *see* ECF No. 49-4 at 3—regarding the contents of the Second ESI Report and the new inspection that precipitated that report. Motion to Strike at 2, 9-10. For the reasons set forth below, the court respectfully grants the Motion to Strike.

### B.    Legal Standards

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that a party must disclose to all other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(a)(2)(A). A party

seeking to disclose a retained expert must provide a report from that expert containing

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). A party who has made a disclosure under Rule 26(a)(2) must supplement or correct that disclosure "in a timely manner if the party learns that in some material respect the disclosure is incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (cleaned up). However, the supplementation rule does not authorize no-holds-barred changes to initial reports. Supplementation is allowed "only for the *narrow purpose* of correcting inaccuracies or adding information that was not available at the time of the initial report." *Seidman v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-03193-WJM-KMT, 2016 WL 9735768, at *5 (D. Colo. May 26, 2016) (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)) (emphasis added).

> Rule 37 governs violations of Rule 26(a) and (e):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).

Fed. R. Civ. P. 37(c)(1).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citation and internal quotation marks omitted). Four factors guide the court's exercise of its discretion in determining whether a violation of Rule 26(a) is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (citations omitted). In seeking to avoid a preclusion sanction, the party responsible for a Rule 26(a) violation bears the burden of showing the failure was substantially justified or harmless. *See, e.g.*, *Contour Pak, Inc. v. Expedice, Inc.*, No. 08-cv-01091-PAB-KMT, 2009 WL 2490138, at *1 (D. Colo. Aug. 14, 2009) (citing Rule 37(c)(1) and noting that the burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosures).

   **C.    Analysis**

      *1.    The Second ESI Report Does Not Comply with Rule 26(a)(2).*

   As QBE argues, the disclosure of the Second ESI Report was untimely because it was disclosed on March 1, 2024—six months after the September 1, 2023 deadline for disclosing affirmative experts. *See* ECF No. 26. The HOA defends this markedly late disclosure as a permissible "supplementation" of the First ESI Report, arguing that it is based on new data from the February 2024 inspection and that it is timely because (1) it was provided on March 1, 2024, four days before the close of discovery (and four days before Mr. Douglas's scheduled

deposition); (2) Mr. Dickey sent the Second ESI Report to QBE just 14 minutes after he received it; and (3) QBE received the report before entry of a final pretrial order in the case. *See* Response at 8. The court is unpersuaded by these arguments and finds that the Second ESI Report does not fall within the "narrow" circumstances in which supplementation is permitted. *Seidman*, 2016 WL 9735768, at *5.

Nothing in the second report purports to "correct[] inaccuracies, or fill[] the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *See id.* at *4 (quoting *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (internal quotation marks omitted)). Indeed, the Second ESI Report identifies no errors in the First ESI Report, but rather reincorporates that report in total and then proceeds to add information—specifically, information about eleven roofs on the complex that were equally available for viewing at the time of the June 2022 inspection (and the HOA's November 28, 2023 disclosure of the First ESI Report). Put simply, the very eleven roofs that were the subject of the additional inspection in February 2024 were standing right in front of ESI's inspector in July 2022, when their condition presumably would have more accurately reflected their state after the June 2021 hailstorm.

It is thus apparent that the HOA and ESI did *not* decide to conduct the February 2024 inspection because of any new, intervening event. Instead, they simply decided to inspect *more* roofs, which they could have done in the first inspection. The HOA's apparent remorse about not conducting a more comprehensive investigation with Mr. Douglas in attendance in the first instance does not fall within the narrow circumstances justifying supplementation under Rule 26(e)(2). *See, e.g.*, *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) ("[A]

10

party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness

report.") (citation and internal quotation marks omitted); *E.E.O.C. v. Freeman*, 778 F.3d 463,

467 n.7 (4th Cir. 2015) (holding Rule 26(e) could not be used as a "loophole" to revise a party's

expert disclosures in light of challenges to the expert's analysis) (citing *Luke v. Family Care &*

*Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)).

Even if the Second ESI Report were a proper supplement under Rule 26(e)(2), the court

respectfully disagrees with the HOA's contention that its disclosure on March 1, 2024, was

timely. To be sure, the disclosure was made within about three weeks of ESI's second inspection

of the Property. But the fact remains that, long before that, the HOA was in possession of the

information underlying the second report: that is, the condition of the roofs of eleven buildings

located on its own property to which it had ready access. This information could have been

investigated and included in the First ESI Report in July 2022, or at some earlier point during the

many intervening months between then and March 1, 2024, when the Second ESI Report was

finally disclosed.

The HOA provides no explanation for its decision to wait more than a year-and-a-half—

until just days before the discovery deadline—to expand its review of the roofs on the Property.

*See generally* Response. So, although the disclosure of the Second ESI Report was "made prior

to the discovery cut-off and therefore [was] not per se untimely," *First W. Cap. Mgmt. Co. v.*

*Malamed*, No. 16-cv-01961-WJM-MJW, 2017 WL 6628108, at *2 (D. Colo. Oct. 2, 2017), that

does not compel the conclusion that the disclosure was "timely" for purposes of Rule 26(e).

*Great N. Ins. Co. v. NGL Warehouse, LLC*, No. 14-cv-03233-PAB-NYW, 2016 WL 11691162,

at *3 (D. Colo. Sept. 21, 2016) ("simply because supplemental disclosures are made on or before

a deadline does not necessarily mean that they are 'timely' under Rule 26(e)").

In assessing timeliness, "the court will also consider a party's diligence in obtaining the supplemental information, the length of time to supplement once the party obtained the supplemental information, and other relevant facts to determine whether a party's course of conduct in supplementing frustrates the purpose of Rule 26 to promote full and orderly pretrial disclosure." *Id.* (citing *Jama v. City and Cnty. of Denver*, 304 F.R.D. 289, 299-300 (D. Colo. 2014); *Harvey v. United States*, No. 04-cv-00188-WYD-CBS, 2005 WL 3164236, at *13 (D. Colo. Nov. 28, 2005)). The record here leaves no reason to doubt that the HOA failed to act in a diligent manner by waiting to generate and disclose—at the tag end of the discovery period—a report encompassing more than double the number of buildings than had been evaluated in the expert's initial report.

Moreover, the information about the new group of roofs in the second report is in no sense "new" or "not previously available." It was at the HOA's (and the expert's) fingertips all along; it simply chose not to analyze and account for it in the original report. *See NGL Warehouse*, 2016 WL 11691162, at *5 (concluding that the plaintiffs were not diligent in supplementing an expert report where they did not explain their failure to supplement in the months following their receipt of pertinent information); *Harvey*, 2005 WL 3164236, at *13 (supplementation was not timely where plaintiff waited four months to supplement after receiving information and offered no justification for the delay).

In these circumstances, the court finds that the HOA reasonably should have known long before March 1, 2024, that the original report (based on the examination of just five of more than forty roofs) was incomplete for its purposes of prosecuting the claims it chose to raise in this

lawsuit. *Cereceres v. Walgreen Co.*, No. 20-cv-03406-PAB-NYW, 2022 WL 2105895, at *2 (D.

Colo. June 9, 2022) ("The obligation to supplement arises when the disclosing party reasonably

should know that its prior [expert disclosures] are incomplete.") (quoting *Jama*, 304 F.R.D.

at 299-300) (internal quotation marks omitted)). The HOA's untimely presentation of the Second

ESI Report does not comply with Rule 26(e) and frustrates the Rule's purpose to promote full

and orderly pretrial disclosure.

> **2.      The HOA's Failure to Comply with Rule 26 Was Neither Substantially
> Justified Nor Harmless.**

Because the HOA's disclosure of the Second ESI Report does not meet the requirements

for a permissible supplementation under Rule 26(e)(1)(A) and was not disclosed in a timely

manner, the court turns to the *Woodworker's Supply* factors to evaluate whether the exclusion of

the report is an appropriate sanction for the HOA's violation of Rule 26(a)(2).

**Surprise and prejudice.** As to the first *Woodworker's Supply* factor, whether there is

"prejudice or surprise to the party against whom the testimony is offered," 170 F.3d at 993, the

court finds that the HOA's actions both surprised and prejudiced QBE.

The record demonstrates that QBE was, in fact, surprised to discover a new, vastly

expanded, and unannounced expert report embedded in more than 5,500 pages of documents a

mere four days (which included a Saturday and Sunday) before Mr. Douglas's deposition. QBE

had no reason to anticipate this turn of events, and its lack of knowledge resulted in significant

prejudice. QBE's counsel was deprived of adequate time to digest the new information in the

Second ESI Report, to confer with its own expert about the new opinions, and to fully prepare to

effectively question an expert whose report was suddenly broadened to more than twice its

original scope (from five roofs to eleven). Too, QBE's expert had no ability to participate in

13

ESI's February 2024 inspection of the additional roofs and to contemporaneously observe

possible errors in the methodology of that inspection and submit rebuttal opinions exposing any

vulnerabilities or inconsistencies in Mr. Douglas's analysis. And the untimely disclosure of Mr.

Douglas's additional opinions further deprived QBE of the opportunity to issue written discovery

requests directed to those opinions. Put simply, QBE's lack of knowledge of the Second ESI

Report until the very end of the discovery period deprived QBE of the ability to incorporate these

opinions into its litigation decisionmaking and to strategize accordingly.

Further, the HOA's actions have caused harm and prejudice not only to QBE but "to the

legal system as a whole"—and to this court in particular. *See Getzel v. ATS Specialized, Inc.*,

No. 21-cv-02836-DDD-NRN, 2023 WL 3276238, at *5 (D. Colo. Apr. 18, 2023), *vacated on

other grounds*, No. 21-cv-02836-DDD-NRN, 2023 WL 9468327 (D. Colo. May 9, 2023). As one

judge in this District has articulated:

> Scheduling orders are contemplated and designed to offer a degree of certainty in
> pretrial proceedings, ensuring that, at some point, the claims and evidence are fixed
> so that parties may proceed to trial. They are not "optional deadlines that can simply
> be ignored or amended on a whim." Deadlines exist for a reason. The adverse party
> should be entitled to rely on the limits and deadlines imposed in the scheduling
> order, which are to be modified only for good cause. Disclosing a new affirmative
> expert report after the deadline (and without permission) creates uncertainty,
> anxiety, and imposes unnecessary costs on the adverse party—prompting either
> more briefing (as in this case) or, if such late disclosures are allowed, more cost
> because the adverse party must then re-engage its own experts for new rebuttal
> reports.

*Id.* (internal citations omitted). In the same way here, the HOA's patent disregard of the

scheduling order has stalled the progress of this case and caused prejudice to both QBE and to

this court's efforts to move a case forward by means of the framework established in a

scheduling order that should be modified *only* upon specific request and for good cause. *Baldwin v. United States*, No. 11-cv-02033-MSK-KLM, 2012 WL 1836097, at *1 (D. Colo. May 21, 2012) ("Rule 16 scheduling orders are at the heart of case management, and if they can be flouted every time counsel determines he made a tactical error in limiting discovery, their utility will be severely impaired.") (quoting *Home Design Servs., Inc. v. Trumble*, No. 09-cv-00964-WYD-CBS, 2010 WL 1435382, at *8 (D. Colo. Apr. 9, 2010) (internal quotation marks omitted)).

For these reasons, the first *Woodworker's Supply* factor weighs decidedly in favor of striking the Second ESI Report as a sanction for the HOA's violation of Rule 26(e)(2).

**No ready cure for the prejudice.** The second *Woodworker's Supply* factor asks whether the prejudice caused by the HOA's actions can be cured. *See* 170 F.3d at 993. In the HOA's opinion, prejudice is easily cured by reopening discovery to allow QBE's expert to "comment" on the Second ESI Report, followed by second depositions of Mr. Douglas and QBE's expert. Response at 12-13; Dickey Decl. ¶¶ 12-13. The HOA's proposal, however, serves to emphasize that the prejudice it has caused QBE cannot be cured short of reopening expert discovery. That is not so benign a proposition as the HOA suggests.

QBE would be obliged to incur significant costs if its expert were compelled to develop new rebuttal opinions, likely including the costs of an inspection to allow the expert to view the eleven additional roofs Mr. Douglas examined. In addition to the preparation of a new rebuttal report, QBE will expend significant time and costs in preparing its expert for a second deposition and re-deposing Mr. Douglas on the new opinions. *See, e.g.*, *City of Las Cruces v. Lofts at Alameda, LLC*, No. 17-809 JCH/GBW, 2023 WL 2366760, at *6 (D.N.M. Mar. 6, 2023)

(recognizing that "any attempt to cure the prejudice to Plaintiffs would be massively expensive and lead to an exceptionally long delay in litigation"); *Spring Creek Expl. & Prod. Co., LLC, v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 9735144, at *5 (D. Colo. June 8, 2016) (recognizing, in striking expert report attempting to alter a damages calculation, that defendants were prejudiced by delayed disclosures that "disrupted the case management schedule and required previously unnecessary expenditures on experts"); *Scholl v. Pateder*, No. 09-cv-02959-PAB-KLM, 2011 WL 3684779, at *5 (D. Colo. Aug. 22, 2011) ("Given that Plaintiffs' expert disclosure violations essentially require expert discovery to start anew as it relates to Dr. McAfee's opinions and any rebuttal opinions, including the provision of new reports and the reopening of depositions, I find that the prejudice to Defendant cannot be readily cured."). The court cannot eliminate these costs, which, but for the HOA's actions, would not have been incurred by QBE. Nor can this court rectify the fact that QBE's expert was unable to observe the February 2024 inspection of the Property by Mr. Douglas as it was occurring and to make a first-hand identification of any potential defects in Mr. Douglas's methods.

In sum, while it may be possible to prolong this case to allow more discovery, that approach would not eliminate the prejudice to QBE—particularly where discovery was on the cusp of completion, and the opinions of the respective experts cabined and solidified. Because the HOA's actions have triggered prejudice against QBE that cannot easily be cured, the second *Woodworker's Supply* factor tips the scale further against the HOA.

***Trial delay and disruption.*** With respect to the third *Woodworker's Supply* factor, the extent to which introducing the Second ESI Report and related testimony would disrupt the trial, *see* 170 F.3d at 993, the court acknowledges that Judge Wang will not set the trial date until after

her ruling on the two pending motions for summary judgment. *See* ECF Nos. 51, 52; *see also* Hon. Nina Y. Wang, Standing Order Regarding Trial and Pre-Trial Procedures, at 6 ¶ B. However, the trial setting will necessarily be delayed if the HOA is allowed to offer the expanded opinions reflected in the Second ESI Report. Fairness demands that QBE be permitted discovery directed toward rebutting those new opinions, and there is no practical way to prevent the necessary additional expert discovery from disrupting the progress of the case. The court rejects that disruption, attendant on the HOA's last-minute disclosure, as contrary to sound case management. *See Getzel*, 2023 WL 3276238, at *5; *Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 6376000, at *3 (D. Colo. Oct. 22, 2015) ("While the Parties concede that the Davis Disclosure would not disrupt trial as a trial date has not yet been set, the prejudice the Davis Disclosure creates is not curable without re-opening expert discovery and re-setting the deadline for Continental to designate a rebuttal expert. The notion is as unappealing as it is inefficient, considering this court's independent responsibility for case management[.]") (citation omitted).

The third *Woodworker's Supply* factor thus weighs against the HOA. *City of Las Cruces*, 2023 WL 2366760, at *6 (refusing to "rely on a lack of a trial date to justify" permitting a party to make a late substitution of one expert witness for another: "Under [this] logic, the parties could continue to engage in discovery disputes and then rely on a lack of a trial date to justify prolonging discovery indefinitely. I am unwilling to conclude that a lack of a trial date is a viable reason for extending discovery, and the trial setting, once again.").

***Bad faith or willfulness.*** Concerning the fourth *Woodworker's Supply* factor, "the moving party's bad faith or willfulness," *see* 170 F.3d at 993, while the court does not make an

explicit finding of bad faith or willfulness on the part of the HOA or its counsel, the court has

significant concerns about the disclosure of the Second ESI Report.

Despite knowing that ESI's first inspection encompassed just five of the 43 roofs at issue

in this litigation, the HOA did not ask ESI to perform an additional inspection in the twelve

months between the filing of this action and the September 1, 2023 deadline for affirmative

expert disclosures. Instead, ESI performed a site visit more than five months after the affirmative

expert disclosure deadline and just one month before the discovery deadline, the latter of which

had been extended for the purpose of scheduling Mr. Douglas's deposition. In its briefing on the

Motion to Strike, the HOA has offered no justification for the delayed timing of the February

inspection.

While counsel for the HOA asserts that he did not expect ESI personnel to generate a

report after the February 2024 inspection, the fact that a report was prepared is hardly surprising

in light of the explicit language in the Work Order, which required ESI to perform a "site

investigation" and "detailed forensic analysis of 11 randomly selected townhouse buildings," and

"to evaluate the exterior elevations and roof covering with photographic documentation of all

storm-related damage to the exterior and roof covering of the building structures." Work Order

at 3. A written report is the most logical way to chronicle the requested information and to

provide a "detailed forensic analysis" of it. Even more, as an experienced attorney, Mr. Dickey

was presumably aware that Rule 26(a) and Rule 37(c) would have precluded the HOA from

presenting any opinions Mr. Douglas developed or based upon the second inspection if it did not

disclose a second report of those opinions and facts.

Further, a reading of the Second ESI Report suggests that even ESI perceived the HOA to

have requested a formal evaluation and report:

> ESI was contacted by Mr. Alan T. Dickey with Colella Zefutie LLC on 2/5/2024 **to conduct an evaluation of the roof** covering for eleven additional building structures at random which the roof coverings had been replaced during 2004/2006 **and to confirm the extent of the wind and hailstorm damage** to the exteriors elevations and roof covering of the building for the properties located in The Players Club Villas in Castle Rock, CO.

Second ESI Report at 6 (emphasis added). It is unremarkable that ESI would understand that it must prepare a written report in response to these requests, and the court finds that the HOA cannot credibly claim otherwise.

More concerning, though, is when and how the HOA went about disclosing the Second ESI Report. At no point prior to March 1—i.e., the date that the HOA received and sent over the final draft of the Second ESI Report—did the HOA inform QBE that there would be an additional inspection of the Property or that ESI had performed one. Even if the court accepted that the HOA was unaware that ESI would author a second report, once the HOA received the draft Second ESI Report on February 29, it could have immediately told QBE about it, and the parties could have consulted on how to move forward.

Compounding all the issues noted above, even when the Second ESI Report was disclosed, it was done in a wholly indirect way. According to QBE, the HOA attached the Second ESI Report to a 5,500+ page file without any notice that the file contained a new report from Mr. Douglas—assertions that the HOA conspicuously fails to contest in either of Mr. Dickey's Declarations. But even more than that, the court is especially perturbed that the HOA had held off on sending Mr. Douglas's file until March 1. If the HOA was truly not anticipating a second report, it is unclear why it had waited to transmit the files for Mr. Douglas's deposition

until four days before it was scheduled. It seems far too convenient to have been a coincidence that the HOA sent Mr. Douglas's file 14 minutes after it received the final draft of the Second ESI Report.

While the HOA's actions in the run-up to the March 1, 2024 disclosure of the Second ESI Report are no cause for praise, the court declines to make a finding that the HOA acted in bad faith or with a willful purpose to delay the litigation or to prejudice QBE's position in the case. Regardless, under the circumstances, the court finds that permitting the HOA to offer the Second ESI Report and related testimony would be fundamentally unfair under to QBE. *See Austin v. Brown*, No. 21-cv-02682-RMR-SBP, 2023 WL 4659789, at *6 (D. Colo. July 20, 2023) (granting defendant's motion to strike without finding willfulness or bad faith when the other *Woodworker's Supply* factors "decidedly weigh[ed] in favor of excluding [the expert's] testimony").

On balance, the *Woodworker's Supply* factors weigh in favor of excluding the Second ESI Report as the HOA has failed to carry its burden to show that its violation of Rule 26(e)(2) was either justified or harmless. In deciding that the sanction of exclusion should be imposed, the court observes that the HOA remains able to support its claims by means of the First ESI Report and related testimony. Accordingly, the HOA will not be allowed to use the Second ESI Report "to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1).

## CONCLUSION

For the reasons set forth herein, the Motion to Strike (ECF No. 49) is **GRANTED**. The Second ESI Report disclosed in Plaintiff's Revised Rule 26(a)(2) Expert Designation is **STRICKEN** and shall not be used to supply evidence in this matter. All witnesses are

**PRECLUDED** from providing testimony related to the Second ESI Report, including the inspection of the Property in February 2024.[3]

DATED: November 18, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[3] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").